## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **Charles C. Williams** | : | |
| | : | |
| **Plaintiff,** | : | **No. 3:20-cv-806(VLB)** |
| | : | |
| **v.** | : | |
| | : | **May 21, 2021** |
| **Rodriguez, et al.,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

### MEMORANDUM OF DECISION
### DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION [DKT. 8]

Plaintiff, Charles C. Williams, an inmate under the custody of the Connecticut Department of Corrections ("DOC") who was incarcerated at Osborn Correctional Institute ("Osborn") and is now incarcerated at Brooklyn Correctional Institute ("Brooklyn"), has filed this action seeking relief under 42 U.S.C. § 1983. Compl., Dkt. 1. Plaintiff generally alleges that several DOC employees—Warden Rodriguez, Deputy Warden Hines, Deputy Warden Thibeault, Lieutenant John Doe, Lieutenant Jane Doe, Captain Chapdelaine, and Dr. Furey—violated several of Plaintiff's constitutional rights while he was in custody at Osborn. *Id.*

Plaintiff, proceeding as a self-represented party (also known as *pro se*),[1] has filed a motion for a temporary restraining order and preliminary injunction seeking

---

[1] Plaintiff is proceeding as a *pro se* litigant. Thus, the Court will construe his pleadings liberally and interpret them to raise the strongest arguments they suggest. *See e.g., Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) ("It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they *suggest.*'") (emphasis in original).

for a court order (1) requiring Defendants, their successors, co-workers, agents, and employees to provide Plaintiff with adequate and safe protective measures to mitigate the spread of COVID-19, including providing hand sanitizer, undiluted bleach and other cleaning supplies, (2) enjoining defendants from deliberately exposing Plaintiff to inmates who are carriers of COVID-19, (3) requiring defendants to arrange for Plaintiff to remain in his cell on single cell-status, and (4) requiring defendants to provide Plaintiff with an appropriate course of action to protect Plaintiff from contaminated water. Mot. at PDF p.2–3.

Defendants filed an objection arguing that (1) none of the individual-capacity defendants are capable of providing the relief sought in the motion because Plaintiff is not incarcerated in a facility where any of the Defendants work, (2) Plaintiff failed to meet his burden of establishing irreparable harm, and (3) to the extend that the motion seeks relief related to the alleged contaminated water at Osborn, it must be denied as such a claim is moot and mis-joined, as it is unrelated to the claims in the Complaint. Obj., Dkt. 33.

Plaintiff filed a response to Defendants' objection in which he repeats the allegations of egregious conduct on the part of Defendants that are the focus of his complaint. Reply, Dkt. 38. Further, in interpreting his pleadings, it appears Plaintiff now requests a preliminary injunction limited to enjoining Defendants from retaliating against Plaintiff in the future by prohibiting conduct that will increase his risk of being infected with COVID-19.

After review of the pleadings and the case record, the Court denies the motion for preliminary injunction for the reasons set forth below.

I.      BACKGROUND

A.      Complaint and Initial Review Order

The underlying complaint was filed in June 2020.  Compl., Dkt. 1.  Thereafter, the Court entered an initial review order ("IRO") pursuant to 28 U.S.C. § 1915A(b). IRO, Dkt. 9.  In the IRO, the Court summarized Plaintiff's complaint.  *Id.*  The Court incorporates the interpretation of the complaint as stated in the IRO here.  The Court will repeat only those allegations relevant to this decision.

In the underlying complaint, Plaintiff generally alleges that during the beginning of the COVID-19 pandemic and while Plaintiff was incarcerated at Osborn, Plaintiff was subject to a retaliatory cell transfer to a COVID-19 positive cell unit.  Plaintiff further alleges that the transfer was motivated by Defendants' animus towards Plaintiff for filing lawsuits against other DOC employees.   In the IRO, the Court permitted the following claims to proceed (1) a First Amendment retaliation claim against defendants Rodriguez, Hines, and Thibeault, each in their individual capacities for damages;  (2) an Eighth Amendment deliberate indifference to health and safety claim pertaining to protective and preventive COVID-19 measures against Rodriguez, Hines, Thibeault, John Doe, Jane Doe, and Chapdelaine, each in their individual capacities for damages; (3) an Eighth Amendment deliberate indifference to health and safety claim related to his transfer to C-Unit and his continued confinement in C-Unit in a cell with inmates who tested or presumably were then positive for COVID-19 against Rodriguez, Hines, Thibeault, John Doe, Jane Doe, Chapdelaine, and Furey, each in their individual capacities for damages; and (4) a state law claim of Intentional Infliction of

Emotional Distress against Rodriguez, Hines, Thibeault, John Doe, Jane Doe, Chapdelaine, and Furey, each in their individual capacities for damages.  IRO at 21–22, Dkt. 9.

Also included in his complaint were general claims relating to the drinking water at Osborn.  The Court dismissed the water claims because they were improperly joined and failed to state a claim upon which relief can be granted.  IRO at 18.  The Court informed Plaintiff that, should he seek to pursue a claim of water contamination, he must do so by filing a separate lawsuit.  IRO at 21.

### B.   Motion for Preliminary Injunction

Attached to Plaintiff's motion for preliminary injunction is an affidavit of Plaintiff providing information relating to his conditions of confinement at Osborn during the COVID-19 pandemic, including: (1) Defendants have been moving inmates from other facilities and not subjecting them to quarantine before introducing those inmates to the general population, (2) Defendants have been relying solely on temperature checks to determine whether an inmate is infected with COVID-19, (3) correctional staff members are not being screened before entering the facility, (4) recently infected inmates are being placed in communal cells with Plaintiff without having first received a negative test, (5) transferred inmates are being placed in the general population without being tested for COVID-19, (6) inmates are not being given adequate supplies to mitigate the risk of spread, (7) Defendants are not complying with a settlement agreement entered in another case, and (8) Defendants' failure to comply with the settlement agreement caused an outbreak in E-Block and C-Block in July 2020.  Mot. at PDF p.9–10.  Plaintiff

further states that correctional officers at Osborn have been strategically utilizing sick days by calling out on weekends, resulting in a staff shortage and the need for weekend-long prison lockdowns.  Mot. at PDF p.11.  Plaintiff claims that inmates who want to be tested and are symptomatic have been denied tests because the facility does not want to know if there is an outbreak.  Mot. at PDF p.12.  Plaintiff states that food trays are not being adequately cleaned between uses.  *Id.*  Plaintiff claims he has been denied a shower during lockdown.  *Id.*  Plaintiff states that seven inmates have died in Osborn.  Mot. at PDF pp.4–5.

Plaintiff further provides specific allegations relating to conditions felt solely by him.  Specifically, Plaintiff claims that Defendants placed him in a cell with an inmate who tested positive for COVID-19 when Defendants knew Plaintiff was negative for COVID-19.  Mot. at PDF pp.4–5, 8.  Plaintiff further states that Defendants placed dangerous and mentally ill inmates in Plaintiff's cell for the purpose of putting Plaintiff's safety at risk.  Mot. at PDF p.9.  Plaintiff claims that this conduct was motivated by Defendants' animus towards Plaintiff because Plaintiff filed lawsuits against other DOC employees and a petition for habeas relief.  Mot. at PDF p.8.

C.    Post-Motion Transfer

In March 2021, Plaintiff filed a separate motion for temporary restraining order and preliminary injunction seeking a court order enjoining Defendants' from transferring him to another facility.  Second Mot. for TRO, Dkt. 13.  The Court denied the motion for a temporary restraining order finding Plaintiff failed to allege with sufficient specificity what immediate and irreparable harm he faces should the

temporary restraining order be denied.  Order Denying Second Mot. for TRO, Dkt. 14.  Thereafter, Plaintiff filed a motion to withdraw the motion for preliminary injunction.  Mot. to Withdraw, Dkt. 21.  Plaintiff's motion to withdraw indicated that he has been moved and has already made do with his new living arrangements.  *Id.* The docket report reflects that Plaintiff is now at Brooklyn.

## II.   LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  "A party seeking a preliminary injunction must generally show a likelihood of success on the merits, a likelihood of irreparable harm in the absence of preliminary relief, that the balance of equities tips in the party's favor, and that an injunction is in the public interest." *Am. C.L. Union v. Clapper*, 804 F.3d 617, 622 (2d Cir. 2015) (citing to *Winter,* 555 U.S. at 20).

A preliminary injunction can only bind "(A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)."  Fed. R. Civ. P. 65(d)(2).

## III.   ANALYSIS

### A.   Capable of Providing Relief

Defendants argue that the motion should be denied because the named Defendants are not capable of providing the relief sought by Plaintiff because none of the named Defendants are employed at the facility Plaintiff is at—Brooklyn—nor do they have control over Plaintiff's conditions of confinement while there.  The

current work assignments for the Defendants are as follows: defendant Thibeault is the warden at Willard-Cybulski Corrections Institution; defendant Chapdelaine is the deputy warden at Willard-Cybulski; defendant Furey currently serves as one of DOC's Regional Chief Operating Officers where he oversees operations at several facilities, but he does not oversee operations at Brooklyn; defendant Hines has retired, and defendant Rodriguez is currently the District 1 Administrator for the DOC, but Brooklyn is not part of District 1.  Plaintiff argues that the motion for preliminary injunction could be granted notwithstanding his transfer because he could be transferred to a facility where one of the defendants are employed. Plaintiff further argues that defendant Rodriguez has significant power and can tamper with Plaintiff's records, affect transfers, and deny him access to programs.

A district court lacks authority to order injunctive relief against non-parties unless the non-parties fall within one of the exceptions provided under Rule 65(d). *See Sumpter v. Skiff*, 260 Fed. Appx. 350, 351 (2d Cir. 2008) (finding no error in district court denying application for preliminary injunction against non-party who did not fall within one of the exceptions under Rule 65(d)); *Doctor's Assocs., Inc. v. Reinert & Duree, P.C.*, 191 F.3d 297, 302–06 (2d Cir. 1999) (finding that district court lacked authority to enter an injunction against non-parties who were not shown to be a party's officers, agents, servants, employees, attorneys, or persons in active concert or participation who received actual notice).

Defendants are correct in arguing that, to the extent Plaintiff is seeking injunctive relief against nonparty employees at Brooklyn, the Court must deny that request.  That is because Plaintiff has not shown, nor is it apparent to the Court

based on the record, that employees at Brooklyn (none of which are defendants in this action) are officers, agents, servants, employees, attorneys, or persons in active concert or participation with Defendants. Therefore, to the extent Plaintiff is seeking injunctive relief against employees at Brooklyn, that request is denied.

However, the Court does not interpret Plaintiff's pleadings to be requesting relief from non-defendants. Rather, the Court interprets Plaintiff's pleadings to be requesting an order prohibiting Defendants from further retaliating against Plaintiff and to provide him with safety measures if Plaintiff in the future becomes subject to their control. The Court rejects Defendants argument that the Court must deny the motion for preliminary injunction because Defendants do not have present control over Plaintiff. The cases Defendants rely on are distinguishable and do not provide for such a rule, as discussed below.

Defendants first cite to *Gulley v. Ogondo*, 19-cv-612(SRU), 2020 WL 1863276 (D. Conn. Apr. 13, 2020) for the proposition that "defendants must be capable of providing the relief sought by the plaintiff" in order for a court to issue a preliminary injunction. (citing to *Wells v. Jacobs*, No. 02-cv-0633S(F), 2004 WL 1146028, at *2 (W.D.N.Y. Mar. 22, 2004)). In *Gulley*, the plaintiff was in DOC custody following his state court conviction. *Id.* at *1. The plaintiff brought a civil rights action against various DOC employees asserting claims of excessive force, deliberate indifference, and retaliation. *Id.* at *1–2. The plaintiff then filed a motion for preliminary injunction, seeking the district court to order his immediate release from DOC custody due to the risk of contracting COVID-19. *Id.* at *1. The district court denied the motion on procedural grounds, but noted that it also would have

denied the motion because the plaintiff only identified the Commissioner of the DOC as a person capable of affording the plaintiff's immediate release but the Commissioner was not a defendant in that action. *Id.* at *2. Thus, the district court in *Gulley* found that the named defendants were not capable of providing the relief sought. *Id.*

This case is unlike *Gulley* because the plaintiff in *Gulley* was seeking immediate release from custody. In *Gulley*, there was no reason to believe that any of the named defendants had, or could ever have, the power to afford the sought-after relief if ordered to do so by a court. Here, the Defendants could in the future be put in a position where they could afford at least some of the sought-after relief. Plaintiff could be transferred to a facility where Defendants work or a facility where defendants have control over Plaintiff's conditions of confinement.

Defendants also cite to *Wells v. Jacobs*. In *Wells*, the plaintiff brought a civil rights action against New York State Department of Corrections Services staff members from two facilities where he was no longer housed. 2004 WL 1146028 at *1. The plaintiff filed a motion for preliminary injunction seeking an order requiring the defendants to immediately provide the plaintiff with access to physical therapy. *Id.* The district court denied the motion, first finding that it lacked personal jurisdiction over NY DOC employees at the facility where the plaintiff was then-housed and could not order those persons to provide the plaintiff with the relief sought. *Id.* at *2.

This case is unlike *Wells* because the plaintiff in *Wells* was seeking relief from non-parties. Here, Plaintiff's motion can be interpreted as seeking relief from

both parties and non-parties.  As stated above, the Court will not and cannot order non-parties to afford Plaintiff the sought-after relief.  However, the Court does have jurisdiction over Defendants here and could afford at least some of the relief sought.  Namely, the Court could order Defendants to cease any retaliation against Plaintiff and order Defendants to protect Plaintiff from unnecessary exposure to COVID-19 should they have control over Plaintiff in the future.  While this would not necessarily require Defendants to take any immediate action, if Plaintiff ever became in their control in the future, Defendants would be required to act or not act as ordered by the Court.

Defendants also cite to *Rufino*, which states "[t]he Second Circuit has held that an inmate's request for declaratory and injunctive relief against correctional staff or conditions of confinement at a particular correctional institution becomes moot when the inmate is discharged or transferred to a different correctional institution."  *Ruffino v. Trestman*, No. 3:12-CV-435 VLB, 2012 WL 4023388, at *1 (D. Conn. Sept. 12, 2012) (citing to *Mawhinney v. Henderson*, 542 F.2d 1, 2 (2d Cir. 1976)).  But an exception applies where the claim is "capable of repetition, yet evading review and the repetition will affect the same complaint party."  *Id.* (citing to *Altman v. Bedford Cent. Sch. Dist.*, 245 F.3d 49, 71 (2d Cir. 2001) (internal quotation marks omitted).  The district court in *Ruffino*, found that the risk of the inmate being transferred back to a correctional institute with the defendants in the action is speculative and does not meet the exception.  *Id.*  There, the district court noted that the plaintiff's chances of transfer related to his behavior and disciplinary record.  *Id.*

*Ruffino* is distinguishable because there the district court noted that transfer was based on the plaintiff's behavior. Here, there is nothing in the record that explains why the DOC transfers inmates from one facility to the other. There is no reason in the record that shows Plaintiff could not or would not be transferred to one of the Defendants' facilities immediately following this decision and then transferred again if he filed another motion for preliminary injunction. While there is no basis in the record for the Court to find that has happened here, it is quite possible and would result in Plaintiffs claims for preliminary injunction evading review.

Simply because defendants are not in present control over an inmate-plaintiff does not justify denial of the injunctive relief sought here, where Plaintiff seeks an order prohibiting the named Defendants from retaliating against Plaintiff in the future by placing him at risk of being infected with COVID-19. Plaintiff could become within the control of the Defendants. Under the facts of this case, it is unnecessary to wait for Plaintiff to become subject to Defendants' direct control when the Court can adjudicate the merits of the motion for preliminary injunction now.

Therefore, the Court denies Plaintiff's motion to the extent he is seeking injunctive relief against nonparties and will consider the merits of Plaintiff's motion to the extend he is seeking injunctive relief against the named Defendants.

B.   <u>Merits</u>

Plaintiff argues that (1) Defendants ongoing deprivation of constitutional rights subject him irreparable harm due to the risk of experiencing medical health

issues if infected with COVID-19, (2) the hardship on Plaintiff if the motion is denied outweighs the hardship on Defendants if granted, (3) his claims are likely to succeed on the merits, and (4) the public interest is served by granting the motion. Defendants objection only addresses the irreparable harm component, arguing that Plaintiff is not subject to irreparable harm due to measures taken by the DOC to protect inmates from the spread of COVID-19. Plaintiff's reply briefing does not challenge any of the factual allegations asserted in Defendant's opposition, rather it asks the court to "view defendant[']s opposition with close examination of the facts." Reply at 5. Plaintiff's reply also does not address whether he currently is subject to an actual and imminent risk of serious illness due to the COVID-19 pandemic.

      i.    *Standard Irreparable Harm Analysis*

The Court will first address whether Plaintiff has established the likelihood of irreparable harm. *JBR, Inc. v. Keurig Green Mountain, Inc.*, 618 F. App'x 31, 33 (2d Cir. 2015) ("the moving party must first demonstrate that irreparable harm would be 'likely' in the absence of a preliminary injunction 'before the other requirements for the issuance of [a preliminary] injunction will be considered.'") (citing to *Rodriguez ex rel. Rodriguez v. DeBuono,* 175 F.3d 227, 234 (2d Cir. 1998)).

Plaintiff argues that Defendants' conduct subjects him to and increased risk of contracting COVID-19 and experiencing severe illness or death, which constitutes irreparable harm. Defendant argues that the irreparable harm Plaintiff alleged in his motion no longer applies because he is no longer at Osborn and no new evidence has been presented showing irreparable harm at Brooklyn. In

addition, Defendants attach a declaration from Dr. Cary Freston, the Acting Regional Medical Director with the DOC.  Obj. at Ex. A at ¶ 4.  Dr. Freston attests familiarity with DOC COVID-19 mitigation efforts.  *Id.*  Dr. Freston states that the DOC conducts periodic, bi-weekly testing of all inmates in addition to testing suspected COVID-19 infections, intakes, and transfers.  *Id.* at ¶ 5.  Further, Dr. Freston states that all staff are tested weekly.  *Id.* at ¶ 6.  Dr. Freston attests that all inmates have been offered a vaccine and as of April 16, 2021, 4,362 inmates had been vaccinated, which represents 48.8% of the inmate population.  *Id.* at ¶¶ 11–12. Dr. Freston also attests that, at the request of the Attorney General's office, she reviewed Plaintiff's medical records, which show he does not have a medical condition that the CDC recognizes as being a possible risk factor for worsened outcome to COVID-19 infection.  *Id.* at ¶ 22.

By contrast, many of Plaintiff's factual assertions appear to be beyond his personal knowledge and based on rumor and inuendo. The most obvious example is his assertion that correctional staff members are not being screened before entering the facility.   The other allegations rely on the representations of third parties.

"A showing of irreparable harm is 'the single most important prerequisite for the issuance of a preliminary injunction.'" *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009).   "[T]o satisfy the irreparable harm requirement, [p]laintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the

harm." *Id.* "A substantial risk of serious illness or death has often been found to constitute irreparable harm." *Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411, 447 (D. Conn. 2020) (citing to *Innovative Health Systems, Inc. v. City of White Plains*, 117 F.3d 37, 43-44 (2d Cir. 1997) and *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332-33 (2d Cir. 1995)). As of May 21, 2021, 3,422,907 people world-wide and 582,346 people in the United States have died from contracting COVID-19.[2] Unsafe conditions of confinement during the COVID-19 pandemic can increase the risk of contracting COVID-19 and as a result constitute irreparable harm. *Id.* at 448 (collecting cases).

In *Martinez-Brooks*, four-inmates at a federal correctional facility in Connecticut brought suit alleging that the warden and staff at that facility failed to take the risk of COVID-19 seriously and utilize tools that allowed them to transfer inmates to home confinement. 459 F. Supp. 3d at 414–15. The petitioners filed an emergency motion for temporary restraining order and preliminary injunction, generally seeking an order of the court requiring the respondent to provide for home confinement for eligible and appropriate inmates. *Id.* at 416. In analyzing whether the petitioners satisfied the irreparable harm requirement, the district court noted the then-serious outbreak of COVID-19 at the facility, which was one of the worst in the federal prison system. *Id.* at 448. The district court found that the alleged violations of medically vulnerable inmates' constitutional right to be free from cruel and unusual punishment constituted irreparable harm. *Id.* at 416, 448.

---

[2] *See WHO Coronavirus (COVID-19) Dashboard*, WHO, available at: https://covid19.who.int/ (last visited May 21, 2021).

In *Arias v. Decker*, 459 F. Supp. 3d 561 (S.D.N.Y. 2020), two persons detained by Immigration Custom and Enforcement, filed a petition for writ of habeas corpus requesting release from custody due to the COVID-19 pandemic.  The petitioners presented evidence showing that they suffered from chronic medical conditions and faced an imminent risk of serious injury or death if exposed to COVID-19.  *Id.* at 565–66.  The petitioners filed a motion for temporary restraining order and preliminary injunction.  *Id.* at 565.  The district court granted both.  *Id.* at 565.  The district court's discussion on irreparable harm is particularly relevant here.  In *Arias*, the district court found that the petitioners established irreparable harm based on evidence of rapid spread of COVID-19 in the world and in the area of detention, the increased risk detained persons face of contracting COVID-19, and the petitioners' medical conditions that put them at increased risk of severe illness if they contracted COVID-19.  *Id.* at 569–71.

*Martinez-Brooks* and *Arias* are distinguishable from this case for two reasons.  The most important distinction is that Plaintiff has not alleged or otherwise established that he is medically vulnerable or would otherwise face a significant risk of serious illness or death should he be infected with COVID-19.  Rather, the evidence supports the alternative is true.  This is the evidence from Dr. Freston's unrefuted declaration, which provides that Plaintiff is not medically vulnerable based on a review of his medical records.  Obj. at Ex. A at ¶ 29.

This case is also distinguishable from *Martinez-Brooks* and *Arias* because both of those cases were decided during the very early months of the COVID-19

pandemic.[3]  Unlike today, during the time both cases were filed COVID-19 was not as well understood, personal protective equipment ("PPE") and COVID-19 tests were in short supply, safety effective protocols had not been developed and adopted by penal institutions and there was no COVID-19 vaccine.  At the time of this decision, much more is known about the virus, PPE and testing is both widely available and used, and highly effective COVID-19 vaccines have been FDA approved for approximately six months.[4]  As of May 21, 2021, 48.2% of the United

---

[3] Both *Martinez-Brooks* and *Arias* were decided in May 2020.  On March 10, 2020, the Governor of the State of Connecticut declared COVID-19 a public health emergency.  *See Declaration of Public Health and Civil Preparedness Emergencies*, Ned Lamont, Governor of State of Connecticut (Mar. 10, 2020) available at: https://portal.ct.gov/-/media/Office-of-the-Governor/News/20200310-declaration-of-civil-preparedness-and-public-health-emergency.pdf.  The next day, the World Health Organization declared COVID-19 a global pandemic.  *WHO Director-General's Opening Remarks at the Media Briefing on COVID-19*, World Health Organization (Mar. 11, 2020), https://www.who.int/director-general/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020.  On March 13, 2021, the President of the United States declared a national state of emergency to slow the infectivity rate and treat those infected with COVID-19.  *See Presidential Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, 85 FR 15337 (Mar. 13, 2020).

[3] *Trends in Number of COVID-19 Cases and Deaths in the US Reported to CDC, by State/Territory*, CDC.Gov, available at: https://covid.cdc.gov/covid-data-tracker/#trends_dailytrendscases  (last visited Apr. 26, 2021).

[4] The first COVID-19 vaccine approved by the FDA for emergency use authorization was the Pfizer-BioNTech COVID-19 Vaccine, which was approved December 11, 2020.  *See Pfizer BioNTech COVIDF-19 Vaccine*, FDA.Gov, available at: https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/pfizer-biontech-covid-19-vaccine  (last visited May 12, 2021).  One week later to Moderna COVID-19 vaccine was approved; *Modern COVID-19 Vaccine*, FDA.Gov, available at: https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/moderna-covid-19-vaccine  (last visited May 12, 2021); and then the Janssen COVID-19 Vaccine, commonly referred to as the Johnson & Johnson COVID-19 Vaccine, became available February 27, 2021.  *Janssen COVID-19 Vaccine*, FDA.Gov, available at: https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/janssen-covid-19-vaccine  (last visited May 12, 2021).

States population has received at least one dose of one of the COVID-19 vaccines and 38.1% have been fully vaccinated.[5]  In the state of Connecticut, as of May 19, 2021, 56.1% of the population has received at least one vaccine and 46.6% of the population has been fully vaccinated.[6]  Most notably, according to Dr. Freston, all inmates in the DOC have been offered a vaccine and 48.8% of the population has been vaccinated as of April 18, 2021.  Obj. at Ex. A at ¶¶ 11–12.  Dr. Freston further provides that Plaintiff was offered the COVID-19 vaccine and he refused inoculation.  *Id.* at ¶ 24.  To state simply, the COVID-19 pandemic in May 2020 was quite more dire then the pandemic now.  Thus, the urgency and risk that is reflected in the *Martinez-Brooks* and *Arias* decisions is not as significant now.

Plaintiff does not disclose the fact that he was offered and refused the vaccine.  Nor is there anything on the record explaining why he refused to be inoculated from a COVID-19 infection.  As a result, the Court is left to infer from the record the meaning of his refusal. The Court concludes the Plaintiff perceives the vaccine to pose more risk to his health than COVID-19.  Since the vaccine is FDA approved and reports of complications are nearly nil, [7] the Court concludes Plaintiff does not have a sincere, or at least rational, fear that COVID-19 poses an irreparable risk of harm to him.

---

[5] *COVID-19 Vaccinations in the United States*, CDC.Gov, available at: https://covid.cdc.gov/covid-data-tracker/#vaccinations (last visited May 21, 2021).
[6] *COVID-19 Vaccine Distribution in Connecticut – Update for 5/19/2021*, CT.Gov, available at: https://data.ct.gov/stories/s/CoVP-COVID-Vaccine-Distribution-Data/bhcd-4mnv/ (last visited May 21, 2021).
[7] *Possible Side Effects After Getting a COVID-19 Vaccine*, CDC.Gov, available at: https://www.cdc.gov/coronavirus/2019-ncov/vaccines/expect/after.html (last visited May 21, 2021).

In summary, Plaintiff has not shown an actual and imminent risk of serious illness from the COVID-19 pandemic because (1) he has not shown he has a condition or conditions that put him at increased risk of serious illness should he be infected, (2) the spread of COVID-19 has been greatly diminished with the introduction of vaccines in the general public and in the DOC, and (3) Plaintiff believes a benign vaccine poses more of a risk to his health than COVID-19. Therefore, under the traditional irreparable harm analysis, Plaintiff has not met his burden and he is thus not entitled to injunctive relief.

ii. *Constitutional Claim Irreparable Harm Analysis*

Second Circuit precedent relating to preliminary injunctions has repeatedly indicated that "denial of a constitutional right ordinarily warrants a finding of irreparable harm, even when the violation persists for 'minimal periods' of time." *See e.g., A.H. by & through Hester v. French*, 985 F.3d 165, 184 (2d Cir. 2021). In other words, the Second Circuit has found a presumption of irreparable harm where there are allegations of constitutional violations. In the cases where this sentiment is repeated, there is an ongoing violation or threat of violation of a constitutional right. *See id.* (finding that the alleged constitutional deprivation was "enduring" and "permanent."); *Agudath Israel of America v. Cuomo*, 983 F.3d 620 (2d Cir. 2020) (finding that Governor's Executive Orders limiting in person gatherings would result in irreparable harm to Orthodox Jews trying to assemble for worship); *Jolly v. Coughlin*, 76 F.3d 468, 471, 482 (2d Cir. 1996) (finding that inmate subject to continuous medical lockdown following his refusal to be tested for tuberculosis for religious reasons constituted irreparable harm).

This rule is not absolute.  The Second Circuit has recognized that in a case involving an alleged constitutional violation, where other forms of relief can make a plaintiff whole, a plaintiff cannot establish irreparable harm.  *Savage v. Gorski*, 850 F.2d 64, 68 (2d Cir. 1988).  In *Savage*, three county employees who received termination notices from a recently elected county executive filed a motion for temporary restraining order to prevent their dismissals.  *Id.* at 65–66.  The employees alleged violations under the First Amendment because they were members of a different political party than the county executive and argued their terminations were based on their political affiliations.  *Id.* at 66–68.  The issue before the Second Circuit was whether the chilling effect on the employees First Amendment rights were sufficient to constitute irreparable harm.  *Id.* at 67–68.  The Second Circuit held it was not and held that reinstatement and monetary damages could make the employees whole.  *Id.* at 68.

Here, as outlined above, there is insufficient evidence that Plaintiff is at substantial risk of serious illness.  This is unlike the cases to which the presumption of irreparable harm was applied because there is no evidence of ongoing constitutional deprivation which can be alleviated by the relief sought.  Specifically, Plaintiff has not established that injunctive relief is necessary to protect Plaintiff from a substantial risk of serious illness (i.e., irreparable harm).

Applying the presumption of irreparable harm to this case would be contrary to the policy justifying such a presumption, which is whenever a constitutional right is being violated there is harm.  However, where there is no continuance of the constitutional violation, it is not logical that the presumption should apply.

19

Here, the evidence shows Plaintiff is not at a substantial risk of serious illness or death because the risk of infection is low and he does not have a medical condition that puts him at a heightened risk of serious illness.

Therefore, the presumption of irreparable harm does not apply here. As stated above, Plaintiff has not established the irreparable harm requirement for preliminary injunctive relief. Because the Court finds Plaintiff has failed to establish irreparable harm, the Court need not and will not consider the other requirements for issuance of a preliminary injunction. *JBR, Inc.*, 618 Fed. App'x at 33.

C.   <u>Water Contamination</u>

Defendant argues that, to the extent Plaintiff's motion for preliminary injunction seeks relief related to the alleged contaminated water at Osborn, it must be denied as such claim is moot and unrelated to the claims in the complaint. Plaintiff does not address this argument in his reply. The Court does not interpret Plaintiff's pleadings as continuing to assert this claim for preliminary injunctive relief. However, to the extent Plaintiff is seeking preliminary injunctive relief from exposure to contaminated water, he has not asserted irreparable harm, nor could he establish a likelihood he would succeed on the merits because the water contamination claim was dismissed for failure to state a claim. Therefore, to the extend Plaintiff is seeking a preliminary injunction relating to alleged water contamination, that request is denied.

IV.    **CONCLUSION**

For the aforementioned reasons, the Court denies Plaintiff's motion for a temporary restraining order and for preliminary injunction.

Plaintiff's reply brief suggests he believes denial of this motion absolves Defendants of liability for the alleged conduct.  That is not true.  This denial of preliminary injunction is not a dismissal of the underlying claims that were permitted to proceed in the Court's initial review order.  It is only a denial of the extraordinary remedy of injunctive relief.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated this day in Hartford, Connecticut: May 21, 2021