UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **CHARLES C. WILLIAMS,** | : | No. 3:20-cv-00806 (VLB) |
|    Plaintiff, | : | |
| | : | |
|    v. | : | |
| | : | |
| **WARDEN RODRIGUEZ, et al.,** | : | |
|    Defendants. | : | January 24, 2023 |

## MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. No. 106]

During the early stages of the COVID-19 pandemic, Plaintiff Charles Williams was assigned to a housing unit in Osborn Correctional Institution ("Osborn") that had been reserved for inmates with uncertain COVID status. Mr. Williams subsequently filed a complaint pursuant to 42 U.S.C. § 1983 against Warden Rodriguez, Deputy Warden Hines, Deputy Warden Thibeault, Lieutenant Ryan, Lieutenant Vincenty, Captain Chapdelaine, and Dr. Furey ("Defendants"). The Court construed the complaint to allege plausible retaliation, deliberate indifference, and intentional infliction of emotional distress claims against Defendants.

Now before the Court, is Defendants' Motion for Summary Judgment and Mr. Williams' Motion to Deny Summary Judgment. For the reasons that follow, the Court **GRANTS** Defendants' Motion for Summary Judgment [Dkt. No. 106] and **DENIES** Mr. Williams's Motion to Deny Summary Judgment [Dkt. No. 109].

### I.    FACTUAL BACKGROUND

The following facts are taken from the Local Rule 56 statements of material facts and evidence cited by the parties. The facts are read in the light most

favorable to the non-movant for summary judgment, Mr. Williams.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).[1]

The parties agree that Mr. Williams's surviving claims in this action are brought on the theory that Defendants intentionally exposed him to COVID-19 by transferring him to a particular Osborn housing unit in May of 2020.  Dkt. No. 106-2 at 1–2, ¶¶ 2-3; Dkt. No. 111 at 1, ¶ 2–3.  At the time Mr. Williams's claims accrued, the Connecticut Department of Correction ("DOC") set forth administrative remedies procedures for inmate complaints not pertaining to the provision of health services in its Administrative Directive 9.6.  Dkt. No. 106-2 at 10, ¶ 55; Dkt. No. 106-9.

Pursuant to the version of Administrative Directive 9.6 effective in 2020, an inmate participating in the DOC's grievance process must first seek informal resolution with an appropriate correctional facility staff member.  *See* A.D. 9.6(6)(A) (effective date Aug. 15, 2013).  This informal resolution may begin with

---

[1] The parties have submitted competing statements of facts in compliance with Local Rules 56(a)(1) and (a)(2).  Dkt. No. 106-2; Dkt. No. 111.  Defendants contend that all facts asserted in their 56(a)(1) statement should be deemed admitted, because Mr. Williams "cites *no* evidence to support his disputes" in his Local Rule 56(a)(2) statement.  Dkt. No. 120 at 2.  But this is not true; Mr. Williams has supported his denials of fact through a sworn declaration filed with his Local Rule 56(a)(2) statement.  Dkt. No. 112.  Defendants appear to contend that Mr. Williams' sworn declaration is not evidence that may be considered in a summary judgment ruling, because it "self-serving and conclusory."  Dkt. No. 120 at 3.  But Mr. Williams's declaration makes many detailed assertions of fact, and the Court is unaware of any precedent suggesting that a judge may disregard a party's sworn statement when ruling upon summary judgment simply because it is perceived as self-serving.

2

verbal consultation.  *Id.*  If the "verbal option" fails, an inmate must then submit a written request to an appropriate staff member on an "Inmate Request Form."  *Id.*  A "Unit Administrator" must respond to the prisoner's informal request within 15 business days.  *Id.*

If an inmate is "not satisfied" with the "informal resolution offered" by a Unit Administrator, he or she may then file a formal grievance.  *See* A.D. 9.6(6)(C).  This grievance "must be filed within 30 calendar days of the occurrence or discovery of the cause of the grievance."  *Id.*

If an initial grievance is denied, or rejected, or an inmate has not received a response to it within 30 business days, an inmate may appeal through the filing of a "Level 2" grievance.  *See* A.D. 9.6(6)(G), (I).  With limited exceptions (not applicable to this case), the denial of a Level 2 grievance exhausts an inmate's administrative remedies.  *See* A.D. 9.6(6)(K).

On May 17, 2020, Mr. Williams submitted identical Inmate Request Forms to Warden Rodriguez and Deputy Warden Thibeault.  Dkt. No. 112 at 33, ¶ 105; Dkt. No. 113-1 at 6.  These submissions asserted that Osborn's administration had placed Mr. Williams's health and safety at risk by placing him in a housing unit with inmates who had already likely contracted COVID-19.  *Id.* at 6–7.  The submissions included no allegations of retaliation.  *Id.*  Warden Rodriguez never responded to Mr. Williams's Inmate Request Form.  Dkt. No. 112 at 33, ¶ 105.  But, on May 26, 2020, Mr. Williams received a response from Deputy Warden Thibeault

indicating that the matter had been referred for a nurse supervisor's review. Dkt. No. 112 at 33, ¶ 105; Dkt. No. 113-1 at 6.

Around the time that Mr. Williams submitted Inmate Request Forms, he also told Warden Rodriguez, Deputy Warden Hines, and Captain Chapdelaine that he would file a grievance against them. Dkt. No. 112 at 34, ¶ 106; Am. Compl., Dkt. No. 31-1 at 9, ¶ 24. Rodriguez, Hines, and Chapdelaine reportedly responded by telling Mr. Williams that "the Grievance Coordinator works for them, and that any grievance that goes through the Grievance Coordinators will be denied on [their] word." Dkt. No. 31-1 at 9, ¶ 24. Deputy Warden Hines further stated that Mr. Williams's grievance "may get lost in the mailbox/grievance box." *Id.*

On May 27, 2020, Mr. Williams instructed a correctional officer to file an administrative grievance on his behalf. Dkt. No 112 at 35, ¶ 111. The officer stated that he would file the grievance, but that Warden Rodriguez and Deputy Warden Thibeault had already instructed Osborn staff to disregard Mr. Williams's grievances. *Id.* The next day, a correctional officer came to Mr. Williams's cell to inform him that Warden Rodriguez had his grievance but that it would never be processed. *Id.* at 36, ¶ 112.

On June 10, 2020—just two weeks following the filing of his administrative grievance—Mr. Williams initiated this federal lawsuit in the District of Connecticut. Compl., Dkt. No. 1. As of his summary judgment filings, Mr. Williams has not received a response to his administrative grievance. Dkt. No.

4

111 at 35–36 at ¶¶ 111–12.[2]  And, for this purported reason, he has never filed a Level 2 grievance.  Dkt. No. 111 at 15, ¶ 60.

## II. PROCEDURAL BACKGROUND

On June 10, 2020, Mr. Williams filed this action pursuant to 42 U.S.C. § 1983 as a *pro se* plaintiff against Warden Rodriguez, Deputy Warden Hines, Deputy Warden Thibeault, Lieutenant John Doe, Lieutenant Jane Doe, Captain Chapdelaine, and Dr. Furey.  Dkt. No. 1 at 1.   In an Initial Review Order, the Court dismissed some of the claims brought against Defendants.  Dkt No. 9 at 21–22.  However, the Court permitted Mr. Williams to proceed with the following claims: (1) a First Amendment retaliation claim against Warden Rodriguez, Deputy Warden Hines, and Deputy Warden Thibeault; (2) an Eighth Amendment deliberate indifference claim pertaining to protective and preventative COVID-19 measures against Warden Rodriguez, Deputy Warden Hines, Deputy Warden Thibeault, Lieutenant John Doe, Lieutenant Jane Doe, and Captain Chapdelaine; (3) an Eighth Amendment deliberate indifference claim related to Mr. Williams's transfer and confinement in a housing unit with high COVID-19 exposure against

---

[2] Mr. Williams alleges that Warden Rodriguez testified that he "never allowed [Mr. Williams's] grievance to be processed."  Dkt. No. 112 at 34, ¶ 107.  But, in the deposition transcript cited to support this allegation, Warden Rodriguez merely testified that he was aware that Mr. Williams had filed "a COVID grievance."  Dkt. No. 113-4 at 13.  In the context of his questioning, it is not even clear that Warden Rodriguez's testimony referred to the grievance that Mr. Williams allegedly filed on May 27, 2020.

5

all Defendants; and (4) a state law claim of intentional infliction of emotional distress against all Defendants. *Id.* at 21–22.

On April 13, 2021, Mr. Williams filed an amended complaint that identified the two "Doe" Defendants as Lieutenant Vicenty and Lieutenant Ryan. Dkt. No. 31. The Court subsequently accepted the amended complaint without any modification of the claims surviving initial review. Dkt. No. 41.

On May 13, 2022, Defendants moved for summary judgment on all claims. Dkt. No. 106. And, on June 17, 2022, Mr. Williams responded with a motion asking the Court to deny Defendants' summary judgment motion. Dkt. No. 109. With their respective motions, the parties filed competing statements of facts as contemplated by Local Rule 56(a). Dkt. No. 106-2; Dkt. No. 111.

### III.  LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the burden of showing that there is no such factual dispute. *Liberty Lobby*, 477 U.S. at 256. A factual dispute is "genuine" if there is evidence on which "a reasonable jury could return a verdict for the nonmoving party," and a disputed fact is "material" only if it "might affect the outcome of the suit under the governing law." *Id.* at 248. If the moving party shows that there is no genuine dispute as to any material fact, to defeat the motion the opposing party must provide "specific evidence" that such a dispute exists. *Brown v. Eli Lilly & Co.*,

654 F. 3d 347, 358 (2d Cir. 2011). In making this showing, the opposing party "may not rely on conclusory allegations or unsubstantiated speculation." *Id.*

In deciding a motion for summary judgment, the Court must view the evidence "in the light most favorable" to the non-moving party. *United States v. Diebold*, 369 U.S. 654, 655 (1962). This requires the Court to believe the evidence of the nonmovant and draw "all justifiable inferences" in his favor, *Liberty Lobby*, 477 U.S. at 255, and to "disregard all evidence favorable to the moving party that the jury is not required to believe," *Reeves v. Sanderson Plumbing Prods.*, Inc., 530 U.S. 133, 151 (2000). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Liberty Lobby*, 477 U.S. at 255.

## IV. ANALYSIS

### A. Exhaustion of Remedies

Defendants have moved for summary judgment on several grounds, one of which being that Mr. Williams failed to exhaust his administrative remedies prior to the filing of this action. Dkt. No. 106 at 1. Because the Court finds merit in Defendant's exhaustion argument, it need not consider their additional arguments in support of summary judgment. *See Feaster v. U.S. Bureau of Prisons*, 37 Fed. App'x 15, 17 (2d Cir. 2002) (declining to review the merits of claims that failed on exhaustion grounds).

The Prison Litigation Reform Act ("PRLA") requires prisoners to exhaust administrative remedies *prior* to filing a federal lawsuit regarding prison

7

conditions.  *See* 42 U.S.C. § 1997e(a); *see also Neal v. Goord*, 267 F.3d 116, 123 (2d Cir. 2001) (holding that the PLRA does not permit an inmate to exhaust administrative remedies during the pendency of a suit).  A defendant may invoke a prisoner-plaintiff's failure to exhaust administrative remedies as an affirmative defense to a civil rights claim.  *Jones v. Bock*, 549 U.S. 199, 217 (2007).

Prisoners are excused from PLRA exhaustion requirements only when administrative remedies are not made available to him or her.  *Ross v. Blake*, 578 U.S. 632, 639 (2016).  Such unavailability may exist when: (1) a grievance system "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) "an administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use;" or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Id*, at 643–44.  When remedies have been made available to an inmate, the PLRA requires "proper exhaustion," which "demands compliance with an agency's deadlines and other critical procedural rules."  *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006).

Here, the DOC has adopted a grievance system that required Mr. Williams to file "Level 1" and "Level 2" grievances to exhaust his administrative remedies. A.D. 9.6(6)(K) (effective date Aug. 15, 2013).  Mr. Williams contends that he filed a Level 1 grievance but concedes that he did not file a Level 2 grievance.  Dkt. No.

111 at 15, ¶ 60.[3]  Because Mr. Williams did not file a Level 2 grievance, he did not fully exhaust his administrative remedies.  *See Simms v. Grady*, 3:20-cv-1719 (SALM), 2022 WL 1094077 at *6 (D. Conn. April 12, 2022).

Although Mr. Williams concedes that he did not fully exhaust his administrative remedies, he argues that prison administrators—particularly Warden Rodriguez—thwarted him from taking advantage of a grievance process by refusing to acknowledge the filing of his Level 1 grievance, and, thus, deprived him of "available" administrative remedies.  Dkt. No. 110 at 7–8, ¶¶ 1–3.  This argument is unavailing for two reasons.

First, Mr. Williams initiated this federal lawsuit just two weeks following the alleged submission of his Level 1 grievance.  Because DOC Administrative Directives provide administrators with up to 30 business days to respond to an inmate's Level 1 grievance, *see* A.D. 9.6(6)(I) (effective date Aug. 15, 2013), Mr. Williams never gave prison administrators a chance to deprive him of available remedies prior to the filing of his complaint.  And, because administrative remedies were not currently exhausted or unavailable at the time Mr. Williams filed his initial complaint, the PLRA compels the Court to dismiss all federal

---

[3] Defendants have presented evidence indicating that Mr. Williams did not actually file a Level 1 grievance.  Dkt. No. 106-8 at 3, ¶ 8.  However, Mr. Williams attests that he provided a Level 1 grievance to a correctional officer who placed the grievance in an administrative remedies box on his behalf.  Dkt No. 112 at 35, ¶ 111.  Accepting Mr. Williams's version of events, his Level 1 grievance was filed once deposited in the administrative remedies box.  *See* A.D. 9.6(6)(C) (effective date Aug. 15, 2013).

claims brought against Defendants.  See *Gulley v. Bujnicki*, 3:19-cv-903 (SRU), 2019 WL 2603536 at *4 (D. Conn. June 25, 2019).

Second, DOC Administrative Directives explicitly contemplate the possibility that prison administrators may fail to respond to an inmate's Level 1 grievance within 30 business days.  And, in such a circumstance, an inmate is permitted to file a level 2 grievance.  See A.D. 9.6(6)(I) (effective date Aug. 15, 2013).  Because DOC inmates may file Level 2 grievances even when their Level 1 grievances have been overlooked or ignored by prison administrators, the alleged non-acknowledgment of Mr. Williams's Level 1 grievance did not deprive him of an available administrative remedy.  See *Teveras v. Semple*, 3:15-cv-531 (SALM), 2023 WL 112848 (Jan. 5, 2023) ("The administrative exhaustion process is not unavailable for purposes of the PLRA when an inmate simply chooses not to avail himself of it." (internal quotation marks and citations omitted)).  Even if the DOC denied or disregarded Mr. Williams's Level 1 grievance, this alone does not make the exhaustion process unavailable.  With patience, Mr. Williams could have properly submitted a Level 2 grievance prior to the filing of this lawsuit.[4]

---

[4] In a memorandum in opposition to summary judgment, Mr. Williams claims that prison administrators do not provide inmates with Level 2 grievance forms until a Level 1 grievance has been adjudicated.  Dkt. No. 110 at 13, ¶ 13.  However, Mr. Williams did not make this assertion in his sworn declaration in opposition to summary judgment.  And, in any case, Mr. Williams has not asserted that he affirmatively requested a Level 2 grievance form that prison officials subsequently refused to provide him.

10

**In sum, Mr. Williams admits that he did not exhaust administrative remedies prior to the filing of this suit and has not provided evidence indicating that prison administrators deprived him of available remedies. The statements Mr. Williams alleges were made by DOC officials relating to exhaustion do not amount to coercion or intimidation, because the officials did not impede Mr. Williams's ability to file a grievance, he simply chose not to. Accordingly, the Court dismisses Mr. Williams' federal claims.**

**B.     State Law Claim**

**Along with his federal claims, Mr. Williams was permitted to proceed with an intentional infliction of emotional distress claim brought pursuant to Connecticut state law. Dkt. No. 9 at 16. The PLRA only applies to claims brough under federal law. *See* 42 U.S.C. § 1997e(a). Thus, the Court cannot dismiss Mr. Williams's state tort claim on the ground that he has failed to exhaust administrative remedies. *See Nunez v. Goord*, 172 F. Supp. 417, 430 (S.D.N.Y. 2001) ("As [the] cause of action alleging negligence does not invoke § 1983, or any other federal law, it is not subject to § 1997e(a)'s exhaustion requirement.") But, since the Court has dismissed all of Mr. Williams's federal claims, it is no longer appropriate for the Court to exercise supplemental jurisdiction over his single state law claim. *See Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will**

11

point toward declining to exercise jurisdiction over the remaining state-law claims.") Accordingly, the Court dismisses the intentional infliction of emotional distress claim without prejudice to Mr. Williams's right to pursue the claim in state court.

## V. CONCLUSION

Defendants' motion for summary judgment [Dkt. No. 106] is **GRANTED**. Mr. Williams' motion to deny summary judgment [Dkt. No. 109] is **DENIED**. All federal claims are **DISMISSED with prejudice**. The state law intentional infliction of emotional distress claim is **DISMISSED without prejudice**. The Clerk of the Court is directed to enter judgment for Defendants and close this case.

SO ORDERED.

Dated at Hartford, Connecticut this 24th day of January, 2023.

                                                                                               /s/  
                                                                    **Vanessa L. Bryant**  
                                                                    **United States District Judge**